UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| JAMES E. BOSTIC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | No. 20-1031-JDT-cgc |
| ) | |
| JOHN MEHR, ET AL., ) | |
| ) | |
| Defendants. ) | |
| ) | |

ORDER DIRECTING PLAINTIFF TO FILE A PROPER *IN FORMA PAUPERIS*
AFFIDAVIT OR PAY THE $400 CIVIL FILING FEE

On January 28, 2020, Plaintiff James E. Bostic, who is currently incarcerated at the Bledsoe County Correctional Complex (BCCX), a Tennessee Department of Correction (TDOC) facility in Pikeville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 in the U.S. District Court for the Middle District of Tennessee.  (ECF No. 1.)  He sues John Mehr, the Sheriff of Madison County, Tennessee, and the "Madison County Government," (*id.* at PageID 1-2), with regard to events that occurred while he was incarcerated at the Madison County Criminal Justice Complex (CJC).  On February 4, 2020, U.S. District Judge Aleta A. Trauger transferred the case to this district, where venue is proper.  (ECF No. 5.)

Bostic alleges that CJC personnel denied his requests for medical equipment for his sleep apnea "since 11-30-2019," (*id.* at PageID 1-10), and also complains about numerous

conditions of confinement at the CJC. (*Id.* at PageID 11-21.) He seeks "$51 million in punitive damages," "transfer[] and immediate[] release to TDOC so I can get the care and treatments I need for my sleep apnea," and an "injunction order for [D]efendants to provide me with treatment and a CPAP breathing machine for my sleep apnea." (*Id*. at PageID 3, 4.)

Under the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b), a prisoner bringing a civil action must pay the full civil filing fee. The PLRA merely provides the prisoner the opportunity to make a "down payment" of a partial filing fee and pay the remainder in installments. *Id*. § 1915(b)(2); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997) ("[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan. Prisoners are no longer entitled to a waiver of fees and costs."), *partially overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013).

However, not all indigent prisoners are entitled to take advantage of the installment payment provisions of § 1915(b). Section 1915(g) provides as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

Thus, "[s]uch a litigant cannot use the period payment benefits of § 1915(b). Instead, he must make full payment of the filing fee before his action may proceed." *In re Alea*, 286

2

F.3d 378, 380 (6th Cir. 2002). The Sixth Circuit has upheld the constitutionality of this provision. *Wilson v. Yaklich*, 148 F.3d 596, 602-06 (6th Cir. 1998).

Bostic has filed three previous civil actions in federal court that were dismissed for failure to state a claim or as frivolous.[1] Therefore, he may not file any further action in which he proceeds *in forma pauperis* unless he first demonstrates that he is under imminent danger of serious physical injury. The assessment of whether a prisoner is in imminent danger is made at the time of the filing of the complaint. *See, e.g., Vandiver v. Vasbinder*, 416 F. App'x 560, 561-62 (6th Cir. 2011); *Rittner v. Kinder*, 290 F. App'x 796, 797-98 (6th Cir. 2008); *Malik v. McGinnis*, 293 F.3d 559, 562-63 (2d Cir. 2002); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 312-16 (3d Cir. 2001) (en banc).

In his "First Claim," (ECF No. 1 at PageID 2), Bostic states that he suffers from sleep apnea and that the Defendants have failed to provide him with medically-necessary equipment for it. Specifically, he states that in "June 2018 Bledsoe Prison doctors health care providers did a sleep study on me. [They] discovered that I ha[ve] sleep apnea [and] stop breathing in my sleep so they ordered me a CPAP breathing machine. I'm also diagnosed by Vanderbilt Hospital doctors with serotonin completion sleep disorder." (*Id.* at PageID 8.) He alleges that as a result of not being provided with a CPAP machine while at the CJC, "I have been waking up in the middle of the night at 12:00 a.m., 1:00 a.m. and

---

[1] *See Bostic v. Corr. Corp. of Am., et al.*, No. 3:06-0041 (M.D. Tenn. Jan. 19, 2006) (dismissed for failure to state a claim), *aff'd*, No. 06-5249 (6th Cir. Oct. 12, 2006); *Bostic v. Metro. Public Defender's Office, et al.*, No. 3:05-0455 (M.D. Tenn. June 9, 2005) (dismissed for failure to state a claim); and *Bostic v. Metro. Public Defender's Office, et al.*, No. 3:05-1014 (M.D. Tenn. Nov. 30, 2005) (dismissed as frivolous).

3

2:00 a.m. I'm not getting all my rest. I stop breathing in my sleep which I could die from as well." (*Id*. at PageID 9.) On December 4, 2019, "the [CJC] medical staffs told me that if my family don't bring a CPAP breathing machine, the Jail cannot help me with a CPAP breathing machine." (*Id*. at PageID 7.) Bostic filed sick call requests on December 2 – 6, 2019, but Defendants "will not and won't respond nor refer me to care treatment." (*Id*.; *see also id*. at PageID 8.) He then filed grievances on December 9-10, 2019, but Defendants did not respond or take any action to correct the problem. (*Id*. at PageID 7; *see also id*. at PageID 8.)

Bostic further alleges that he signed a records release on December 12, 2019, authorizing "my medical records from Bledsoe Prison 2017, 2018, 2019" to be sent to the CJC. (*Id*. at Page ID 6.) However, he discovered on January 12, 2020, that no one at the CJC had faxed the form to the BCCX; consequently, his medical records showing the previous diagnosis of sleep apnea had not been sent. (*Id*.; *see also id*. at PageID 7 (medical records show "my sleep apnea 2018, June, July diagnoses and treatments").)[2] Bostic states that he "also ha[s] a history of severe high blood pressure" and has been "prescribed Losartan 100 mg since Nov. 30, 2019," but the Defendants have allegedly failed to refer him to a medical provider for "this treatment." (*Id*. at PageID 8.) On January 17, 2020, he

---

[2] Since Bostic's sleep apnea diagnosis was obtained at the BCCX in June 2018, he evidently was housed at that facility for some period of time before being sent to Madison County, perhaps for additional court proceedings. He alleges his family contacted the Tennessee Department of Correction in January 2020 and was told the paperwork for a transfer back to the state prison system was complete but that it was up to the CJC to initiate the transfer. (ECF No. 1 at PageID 5.) Bostic contends there is no lawful reason to keep him at the CJC. (*Id*.)

4

filed a grievance, to which Defendants have not responded. (*Id*. at PageID 5.) He contends that "[c]ontinued separation from medically approved devices [for sleep apnea] increases my likelihood of more life-altering conditions such as stroke, increased cardiac workload including myocardial infarction, pulmonary atelectasis, pulmonary embolism, [and] anoxic brain." (*Id*. at PageID 4.)

In his "Second Claim," (*id*. at PageID 11), Bostic presents a litany of complaints about prison conditions. For example, he complains that inmates are being served "pennut butter and balony sandwiches," (*id.*), but are not being served enough coffee, (*id.* at PageID 18 ("coffee at breakfast . . . would help take off the edge")). He also complains that inmates are charged $5.00 for sick call requests rather than $3.00. (*Id*. at PageID 11.) He points out the lack of televisions, (*id*.), the lack of recreation during lockdowns, (*id*. at PageID 11-12, 17), and the coverings on cell windows preventing inmate views to the outside, (*id*. at PageID 11, 17 ("This is an act of evil within itself.").) Bostic also does not like the issuance of used or dirty clothing to inmates, (*id*. at PageID 11, 17), the overcrowding which results in inmates sleeping on the floor, the leaky plumbing, paint that "is seriously chipping off" the cell walls, and the mold, (*id*. at PageID 12). He also alleges maintenance records are falsified. (*Id*.) There allegedly is an absence of counseling, mental health, and social work services, (*id*. at PageID 13), and inadequate grievance procedures, (*id*. at PageID 14). CJC personnel allegedly read inmate mail, (*id*.), records are not processed in a timely manner, (*id*. at PageID 15), and there is inadequate computer, paper, newspapers, and typewriter facilities, (*id*. at PageID 16). Bostic also contends there is a "seriously toxic" environment

5

at the CJC among inmates and staff.  (*Id*. at PageID 16 ("everyday life is not normal as you can see").)

There is nothing in Bostic's Second Claim that is sufficient to allege he was in imminent danger of harm.  Bostic's First Claim, however, includes specific allegations suggesting the denial of a CPAP machine did pose an imminent danger of serious physical injury to him at the time he filed his complaint.  Accepting his factual allegations as true for purposes of § 1915(g) analysis, he states that he was diagnosed with sleep apnea in 2018 by medical professionals, (ECF No. 1 at PageID 8), and that the Defendants acknowledged his condition but told him to seek a CPAP machine from his family.  (*Id*. at PageID 7.)  He contends he faced the risk of nighttime breathing cessation and/or blood pressure complications from denial of a CPAP machine.  (*Id.* at 8-9.)

Bostic's contentions regarding the lack of a CPAP machine rise above mere disagreement with a course of medical treatment.  He describes particular documents related to his apnea diagnosis and blood pressure, which plausibly suggests that his allegations do not rest entirely on unsupported speculations.  The Court cannot say, on the record before it, that the First Claim's suggestion of "serious physical injury," (*id*. at PageID 4), is wholly incredible.  *Cf. Crowell v. Hill*, No. 19-cv-43, 2019 WL 1010857, at *3 (W.D. Mich. Mar. 4, 2019) (plaintiff fell short of demonstrating § 1915(g) imminent danger where he alleged that he lost the use of his CPAP machine "on only three prior occasions, and fail[ed] to allege that he suffered harm arising out of the brief delays in receiving a new machine").

The Court finds that Bostic's claim regarding the denial of a CPAP machine sufficiently alleges that he was in imminent danger of serious physical injury as a result of the Defendants' actions when he filed the complaint. Therefore, this case comes within the exception to 28 U.S.C. § 1915(g) and Bostic may be able to take advantage of the installment procedures of § 1915(b). However, in order to take advantage of those installment procedures, a prisoner first must submit to the district court an *in forma pauperis* affidavit and a certified copy of his inmate trust account statement for the six months immediately preceding the filing of the complaint. *Id.* § 1915(a)(2).

In this case, though Bostic submitted a copy of his inmate trust account statement, (ECF No. 2 at PageID 25-26), the *in forma pauperis* affidavit is incomplete because he submitted only the first page of the two-page affidavit form, (*id.* at PageID 24). Both documents are required before Bostic may use the PLRA's installment procedures. Accordingly, Bostic is ORDERED to submit, within 30 days after the date of this order, either the entire $400 civil filing fee[3] or a properly completed and signed *in forma pauperis* affidavit.[4] If he needs additional time to file the document, he may request one 30-day extension of time from this Court. *McGore*, 114 F.3d at 605.

If Bostic timely submits the necessary document and the Court finds that he is indigent, the Court will grant leave to proceed *in forma pauperis* and assess a filing fee of

---

[3] The civil filing fee is $350. 28 U.S.C. § 1914(a). The Schedule of Fees set out following the statute also requires an additional administrative fee of $50 for filing any civil case. That additional fee will not apply if leave to proceed *in forma pauperis* is ultimately granted.

[4] Bostic does not need to submit another trust account statement.

$350 in accordance with the installment procedures of 28 U.S.C. § 1915(b). The entire complaint will then be screened in accordance with 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B). However, if Bostic fails to comply with this order in a timely manner, the Court will deny leave to proceed *in forma pauperis*, assess the entire $400 filing fee from his trust account without regard to the installment payment procedures, and dismiss the action without further notice pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute. *McGore*, 114 F.3d at 605.

If Bostic is transferred to a different prison or released, he is ORDERED to notify the Court immediately, in writing, of his change of address. Failure to abide by this requirement, or any other order of the Court, may likewise result in the dismissal of this case without further notice.

IT IS SO ORDERED.

                                               s/ **James D. Todd**
                                               JAMES D. TODD
                                               UNITED STATES DISTRICT JUDGE